UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

_____
                                        :
UNITED STATES OF AMERICA                :
                                        :   CRIM. NO. 3:03CR218(JBA)
VS.                                     :
                                        :
OSAS AYEKI                              :   FEBRUARY 23, 2005
_____:

## DEFENDANT'S SENTENCING MEMORANDUM

Defendant Osas Ayeki submits this sentencing memorandum in connection with the

proceeding scheduled for March 1, 2005.[1]

By now it is clear that the rules have changed since the hearing started.  Under United

States v. Booker, 125 S. Ct. 738 (2005), the U.S. Sentencing Guidelines are no longer

mandatory.  Instead, this Court must "consider" them as well as all the other factors listed in 18

U.S.C. § 3553(a).  Importantly, the Second Circuit in United States v. Crosby, 2005 U.S. App.

LEXIS 1699 (2d Cir. Feb. 2, 2005), very recently provided guidance to district courts faced with

sentencing proceedings.

Under Booker, "[s]ection 3553(a) remains in effect, and sets forth numerous factors that

guide sentencing."  Booker, 125 S. Ct. at 766.  Those factors include:

---

[1] Defendant regrets filing this memorandum so close in time to the sentencing.  This has been
necessary due to the inability of counsel to meet to review relevant materials and due to other
obligations of counsel.  The undersigned does not seek a continuance of the sentencing, and in
light of the authorities set forth in this memorandum suggests that the sentencing should proceed
regardless of the impact of the Guidelines.

(1)      the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed--

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for--

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--

(i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

(B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

(5) any pertinent policy statement--

(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

Sentencing judges "remain under a duty with respect to the Guidelines – not the previously imposed duty to apply the Guidelines, but the continuing duty to "consider" them, along with the other factors listed in section 3553(a)." Crosby, 2005 U.S. App. LEXIS 1699, at *18.

In order to "consider" the guidelines, "a sentencing judge will normally have to determine the applicable Guidelines range." Id. at *18. Ordinarily, this is "normally to be determined in the same manner as before Booker/Fanfan," notably including the ability of the judge to find facts. Id. at 19. This would, presumably, include the settled law that the government bears the burden of proving the amount of loss and any upward adjustments.

The court in Crosby did offer an example of one situation where "precise calculation of the applicable Guidelines range may not be necessary." Id. at 21.

Now that the duty to apply the applicable Guidelines range is not mandatory, situations may arise where either of two Guidelines ranges, whether or not adjacent, is applicable, but the sentencing judge, having complied with section 3553(a), makes a decision to impose a non-Guidelines sentence, regardless of which of the two ranges applies. This leeway should be useful to sentencing judges in some cases to avoid the need to resolve

3

> all of the factual issues necessary to make precise determinations of some complicated
> matters, for example, determination of monetary loss.

Id. at 21 (emphasis added).

The court in Crosby declined to define how a district judge is to "consider" the

Guidelines.[2]  However, nothing in either Crosby or Booker suggests that a Guidelines range,

once it is found, is to be presumptively considered "reasonable" or, in essence, a default position.

Although the court cautioned that judges should continue to "reduce unwarranted disparities,"

they should now be able to achieve "more individualized justice."  Id. at *26.  "In short, there

need be no 'fear of judging.'"  Id.

With these standards in mind, defendant turns to this case.

1.  **The nature and circumstances of the offense and the history and characteristics of the defendant.**

The nature and circumstances of the offense are set out in the Pre-Sentence Report in

some detail.  While defendant does not agree with all aspects of the alleged offense conduct, it

seems clear that defendant does concede his participation in a conspiracy of some size involving

stolen credit cards.  (See Transcript of Plea Hearing, at 53-55, Oct. 31, 2003).

As to the defendant's history, he has no prior criminal convictions.   (PSR ¶ 65).  This is

surely a major consideration, particularly in sentencing for a non-violent crime.  Further, the PSR

---

[2] Some district courts have adopted this definition:  "The term 'consider' requires the sentencing judge to be "aware of both the statutory requirements and the sentencing range or ranges that are arguably applicable," and be sure that "nothing in the record indicates misunderstanding about such materials or misperception about their relevance."  United States v. Mann, 2005 U.S. Dist. LEXIS 2150, at *13 (S.D.N.Y. Feb. 14, 2005) (Baer, J.).

describes his family situation: his father was reportedly murdered for his political beliefs, and his

childhood was difficult.  (PSR ¶ 68).  He is married and has three children.  (PSR ¶ 71).  He is

their sole means of support, and he has been active in the lives of his children. (Id.).  The Court

may properly consider that "imprisonment is a tragedy for [his] children."  United States v.

Ochoa-Suarez, 2005 U.S. Dist. LEXIS 1667, at *5 (S.D.N.Y. Feb. 7, 2005) (Keenan, J.).

Further, the Court may properly consider the limited earning capacity of his wife.  Cf. United

States v. Galante, 111 F.3d 1029, 1035 (2d Cir. 1997) (upholding downward departure where the

defendant was primarily responsible for supporting a wife and two children and where the

defendant's wife spoke little English and had a limited earning capacity),

He apparently faces a risk of deportation as a result of his conviction in this case.  If that

happens, he will have lost far more than most defendants lose as a result of a conviction.  His

children are United States citizens.  If he is deported he will be faced with the alternative of their

growing up without a father in the United States, or growing up with a father in Nigeria.  This is

a horrible choice – admittedly a choice made necessary by the offense – but nonetheless a

horrible choice that the Court may consider in connection with the "characteristics of the

defendant."   The Court should also consider defendant's lengthy pre-plea and pre-sentence

incarceration.  He has been at the Wyatt Detention Center in Rhode Island, far from his family

and without meaningful programs.

Defendant expects to offer further evidence and argument at the sentencing hearing on this factor. However, this factor seems to weigh in favor of a relatively short sentence of incarceration.

**2.  The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.**

Certain of the subsection (2) factors do not weigh at all in this case, particularly if the defendant is deported. Specifically, it is not clear that a sentence in this case can provide him with needed educational or vocational training, medical care, or other correctional treatment. If he is deported, there is no need to "protect the public from further crimes of the defendant," since he will not be here to commit them. § 3553(a)(2)(C).

The consideration of general deterrence, required under § 3553(a)(2)(B), mandates that the Court consider the extent to which similarly situated potential offenders will be deterred from committing similar crimes by whatever sentence the Court imposes. This is, however, a highly questionable exercise. Defendant has already been incarcerated for about 19 months. The Court can sentence him to up to another 41 months, the statutory maximum. It is impossible to conclude that somewhere along that continuum there is a point where other persons will conclude that, because of the Court's sentence in this case, they will decline to commit similar crimes. In essence, general deterrence assumes that people who decide to commit crimes think

that they will be caught and punished, and that they will rationally consider whether to commit the crime they are contemplating under some sort of risk/benefit analysis. With all due respect to Congress, that seems highly unlikely. In any event, the Court can readily conclude that any sentence imposed, including a sentence of time served, will not serve materially different purposes as it relates to general deterrence.

As to the subsection (a)(2)(A) factor, this is the only factor that weighs in support of anything more than a time served sentence. To be sure, the offense is not trivial. Credit card companies ought not to be exposed to this type of conduct. However, while serious the offense is less serious than many other offenses, such as those involving violence and particularly those involving violence connected with narcotics. Further, even among fraud offenses it did not involve vulnerable victims, which are more deserving of severe punishment. Put simply, five years is a long sentence for a non-violent fraud involving non-vulnerable victims.

**3. The kinds of sentences available.**

So far as incarceration is concerned, the sentence available is from time served to 60 months. If the government is correct that deportation is likely in this case, other aspects of sentencing do not have material relevance.

**4. Sentencing guidelines range.**

This factor is, of course, in dispute. Whether it needs to be resolved, however, is less clear. Crosby, 2005 U.S. App. LEXIS 1699, at *21. In light of the fact that the government has

the burden of proof on each of these issues, defendant reserves comment on this factor until the conclusion of the scheduled hearing.

### 5. Policy Statements.

Defendant knows of no policy statements that the Court should consider relating to this case.

### 6. The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

This factor appears, to some degree, again to consider the Guidelines, if that is the means by which the Court is to consider the sentences of defendants with similar records who have been found guilty of similar conduct. Cf. United States v. Mascolo, 2005 U.S. Dist. LEXIS 2032, at *14  (S.D.N.Y. Feb. 9, 2005) (sentence within Guidelines range is presumptively not disparate). If that is not the means to consider other sentences, then this factor is impossible to apply except as to defendants in this case or, perhaps, by reviewing other cases. Cf. id. at *14-15 (defendant in case of credit card fraud sentenced to 366 days incarceration where loss was $100,000). As to defendants in this case, it is the understanding of the undersigned that other defendants (who have cooperated) have received sentences far lower than the amount of time already served by defendant.

### 7. Restitution.

While restitution clearly is a factor to consider, again if defendant is deported the question of restitution is a minimal one. The condition will be unenforceable if he is not within

the United States.  Further, even if he is not deported anything more than modest restitution seems unlikely to actually be completed based on defendant's work history.

## Conclusion

Taking into consideration all of these factors, a sentence of minimal additional incarceration would adequately take into account § 3553(a).

THE DEFENDANT,

_____
William M. Bloss
Federal Bar No. ct01008
Koskoff Koskoff & Bieder, P.C.
350 Fairfield Avenue
Bridgeport, CT 06604
TEL:  203-336-4421
FAX:  203-368-3244
email: bbloss@koskoff.com

## CERTIFICATION

This is to certify that a copy of the foregoing has been mailed, postage prepaid (and by email), on this 23rd day of February, 2005, to all counsel and pro se parties of record, as follows:

John A. Marella, Esq.
Assistant U.S. Attorney
157 Church Street
23rd Floor
New Haven, CT 06510

_____
William M. Bloss