FILED MANDATE

*NHCF- New Haven*
*03-cr-218*
*ARTERTON*

2006 SEP 14

U.S. DISTRICT COURT
NEW HAVEN, CT

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

SUMMARY ORDER

**THIS SUMMARY ORDER WILL NOT BE PUBLISHED IN THE FEDERAL REPORTER AND MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY TO THIS OR ANY OTHER COURT, BUT MAY BE CALLED TO THE ATTENTION OF THIS OR ANY OTHER COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, at 500 Pearl Street, in the City of New York, on the 15th day of August, two thousand six.

PRESENT:

    HON. CHESTER J. STRAUB,
    HON. ROSEMARY S. POOLER,
    HON. ROBERT D. SACK,
              *Circuit Judges,*

[Seal: UNITED STATES COURT OF APPEALS FILED AUG 1 5 2006 SECOND CIRCUIT]

UNITED STATES OF AMERICA,

                                  SUMMARY ORDER
                                  No. 05-4052-cr

          v.

OSAS AYEKI,

        *Defendant-Appellant.*

| | |
|---|---|
| Appearing for Appellant: | JEREMIAH DONOVAN, Old Saybrook, CT |
| Appearing for Appellee: | JOHN A. MARRELLA, Assistant United States Attorney (Kevin J. O'Connor, United States Attorney, on the brief, William J. Nardini, Assistant United States Attorney, of counsel), CT |

    Appeal from a final judgment of the United States District Court for the District of Connecticut (Janet Bond Arterton, *Judge*).

ISSUED AS MANDATE: 9/5/06

*United States v. Osas Ayeki,*
No. 05-4052-cr

AFTER ARGUMENT AND UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the District Court is AFFIRMED.

---

Ayeki appeals from a judgment entered July 25, 2005, in the District of Connecticut (Janet Bond Arterton, *Judge*), following a guilty plea, convicting him of conspiring to traffic in and use stolen credit cards, in violation of 18 U.S.C. § 1029(b)(2). On appeal, Ayeki challenges both the reasonableness of his sentence and the sufficiency of his indictment. We assume familiarity with the facts, procedural history, and issues on appeal. For the reasons that follow, we affirm.

In calculating the appropriate sentence under the advisory Guidelines, the District Court imposed a four-level enhancement under U.S.S.G. § 3B1.1(a) because of Ayeki's leadership role in the conspiracy, and a twelve-level enhancement pursuant to U.S.S.G. § 2B1(b)(1) because the amount of loss resulting from Ayeki's conduct was in excess of $200,000. Ayeki challenges the factual findings supporting these enhancements. "We review a district court's factual findings made in the course of imposing a sentence under the Guidelines for clear error." *United States v. Ravelo*, 370 F.3d 266, 269 (2d Cir. 2004). Facts relevant to sentencing must be found by a preponderance of the evidence. *United States v. Proshin*, 438 F.3d 235, 238 (2d Cir. 2006).

Section 3B1.1(a) of the Guidelines provides for a four-level increase if the defendant's criminal activity involved five or more participants and the defendant was an "organizer or leader." U.S.S.G. § 3B1.1(a). "Whether a defendant is considered a leader depends upon the degree of discretion exercised by him, the nature and degree of his participation in planning or organizing the offense, and the degree of control and authority exercised over the other members

2

*United States v. Osas Ayeki,*
No. 05-4052-cr

of the conspiracy." *United States v. Szur*, 289 F.3d 200, 218 (2d Cir. 2002) (citation omitted). The District Court's determination of a supervisory role must be supported be specific factual findings, although "[w]e have recognized that district courts have some latitude concerning supervisory role findings when the court makes a specific determination, even though somewhat conclusory, about the reasons for the finding." *United States v. Persico*, 164 F.3d 796, 804 (2d Cir. 1999).

At a sentencing hearing, the District Court heard the testimony of one of Ayeki's co-conspirators, Audley Stewart. Stewart described a conspiracy in which Ayeki, operating out of his Brooklyn apartment, would provide Stewart and a number of other conspirators, known as "runners," with stolen credit cards, which Ayeki obtained from various contacts who stole the cards from Postal Service facilities or from mailboxes. Stewart and the other runners would use the cards, along with fake ID also provided by Ayeki, to withdraw cash and buy merchandise, and would split the proceeds with Ayeki.

Stewart testified that the conspiracy involved approximately twenty persons, including at least four or five runners. He testified that he and his fellow conspirators referred to Ayeki as "chairman" or "chief," and that Ayeki was "up there" and "the highest" in the conspiracy's hierarchy. He described how Ayeki would direct the runners to make specific purchases for Ayeki and his family, and to mail packages of stolen credit cards to Ayeki's relatives elsewhere in the United States and abroad. He testified that Ayeki expected his runners to return to him within a day of receiving the stolen cards, and would "get upset" if they failed to do so and would freeze them out until he "calmed down." When the runners returned from their trips, Stewart

3

*United States v. Osas Ayeki,*
No. 05-4052-cr

testified, Ayeki would take half of the cash and all or most of the merchandise. The District Court found Stewart's testimony credible.

Given this evidence, we see no clear error in the District Court's findings that the conspiracy involved five or more people, and that Ayeki played a leadership role. Ayeki's contrary characterization of the facts – in which he merely acted as a middleman between the sellers of stolen credit cards and those like Stewart who used the cards to steal from the cardholders' accounts – is not wholly implausible, but is by no means compelling. *See Proshin*, 438 F.3d at 238 ("[W]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.") (quotation omitted).

Section 2B1.1(b)(1) of the Guidelines provides for a twelve-level enhancement if the defendant's criminal activity caused in excess of $200,000 in losses, but less than $ 400,000. In making determinations of loss for sentencing purposes, "[t]he district court need not establish the loss with precision but rather 'need only make a reasonable estimate of the loss, given the available information.'" *United States v. Carboni*, 204 F.3d 39, 46 (2d Cir. 2000) (citation and quotation omitted); *see also* Application Notes to Section 2B1.1(b)(1) ("The court need only make a reasonable estimate of the loss."). Here, the District Court found that the loss caused by Ayeki's activity was "at least $200,001."

The evidence before the District Court included Stewart's testimony, and the testimony of Postal Inspector Donald Landisi, who estimated the loss at $ 394,526, at a minimum. Landisi reached this figure by calculating losses on stolen cards used by known conspirators, including Stewart, and various other persons who were in telephone communication with Ayeki. Ayeki

4

*United States v. Osas Ayeki,*
No. 05-4052-cr

challenges Landisi's methodology as likely to be in many cases over-inclusive, because not everyone who both called Ayeki and used a stolen credit card during the time period at issue necessarily obtained the card from Ayeki.

Certainly, Landisi's figure is likely to be both over- and under-inclusive in some respects. However, we need not analyze the fine details of Landisi's methodology; Stewart's testimony alone is sufficient to support the District Court's finding. Stewart testified that he himself had been on around fifty "road trips" for Ayeki. He came back empty handed or almost empty-handed on fifteen to twenty trips. On the other thirty to thirty-five, he came back with cash and purchases. On an "okay day," he brought back $4,000 in cash and $3,000 in purchases. On a "good day" or an "excellent day," he brought back $10,000 (cash and purchases). His best haul was $15,000. On a conservative estimate, disregarding the "good" and "excellent" days, Stewart himself brought back a total of $ 210,000; and he was only one of several runners. Again, we see no clear error in the District Court's finding.

The District Court also imposed a two-level enhancement under U.S.S.G. § 2B1.1(b)(10) because Ayeki's offense involved "production or trafficking of any . . . unauthorized access device or counterfeit access device," and another two-level enhancement under U.S.S.G. § 2B1.1(b)(4) because "the offense involved receiving stolen property, and [Ayeki] was a person in the business of receiving and selling stolen property." Ayeki argues that this constitutes impermissible double-counting. We review this issue *de novo. United States v. Maloney*, 406 F.3d 149, 151-52 (2d Cir. 2005). "[D]ouble counting is permissible in calculating a Guidelines sentence where . . . each of the multiple Guidelines sections applicable to a single act serves a

5

*United States v. Osas Ayeki,*
No. 05-4052-cr

distinct purpose or represents a discrete harm." *Id.* at 153. *See also United States v. Volpe,* 224 F.3d 72, 76 (2d Cir. 2000) ("Multiple adjustments may properly be imposed when they aim at different harms emanating from the same conduct."). Here, the two sections at issue are aimed at different harms; section 2B1.1(b)(10) is aimed specifically at the harm caused by access fraud and identity theft, and section 2B1.1(b)(4) is aimed more generally at the harm of promoting and facilitating theft by acting as a fence. Both sections may therefore properly be applied to the same conduct.

Finally, Ayeki argues that his indictment was defective, because it failed to allege an element of 18 U.S.C. § 1029(b)(2). Because Ayeki raises this argument for the first time on appeal, we read the indictment liberally in favor of sufficiency, absent any prejudice to the defendant. *United States v. LaSpina,* 299 F.3d 165, 177 (2d Cir. 2002); *United States v. Wydermyer,* 51 F.3d 319, 324 (2d Cir. 1995). Further, "in an indictment for conspiring to commit an offense -- in which the conspiracy is the gist of the crime -- it is not necessary to allege with technical precision all the elements essential to the commission of the offense which is the object of the conspiracy." *Id.* at 325.

Ayeki is charged under 18 U.S.C. § 1029(b)(2) with conspiring to violate 18 U.S.C. § 1029(a), and it is an element of § 1029(a) that the defendant obtain more than $ 1,000 through access fraud *within a one-year period.* The indictment, Ayeki argues, alleges that he obtained more than $1,000 as a result of the conspiracy, and that the conspiracy took place within one year, but fails to allege that the aim of the conspiracy was to obtain more than $1,000 *within the space of one year.* However, the indictment specifically alleges a number of incidents of access

6

*United States v. Osas Ayeki,*
No. 05-4052-cr

fraud, conducted in the course of the conspiracy, each of which exceeded the $1,000 minimum. There can be no serious claim that the indictment was not sufficient to put Ayeki on notice of the charges against him, nor that it is so vague as to prevent him from pleading it in the future as a bar to subsequent prosecutions for conduct during the period of the conspiracy. *See Wydermyer*, 51 F.3d at 325. In the absence of any such prejudice, we construe the indictment liberally and find it easily sufficient.

We have considered all of Ayeki's remaining arguments and found them to be without merit. For the foregoing reasons, we affirm.

FOR THE COURT:

ROSEANN B. MACKECHNIE, CLERK

*[signature: Lucille Carr]*

BY

TRUE COPY
Roseann B. MacKechnie, CLERK
by _____ DEPUTY CLERK